**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARY PLUMMER, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.. 1:20-CV-10836 ) ) |
| TRANSPORTES AEREOS PORTUGEUSES S.A., a foreign corporation d/b/a TAP Air Portugal, | ) Honorable _____ ) ) ) |
| Defendant. | ) ) ) |

# CLASS ACTION COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.  Plaintiff Mary Plummer ("Plaintiff"), by and through her counsel, files this Class Action Complaint against TRANSPORTES AEREOS PORTUGEUSES S.A., (hereinafter "***Defendant***" or "***Air Portugal***"), on behalf of herself and on behalf of a class of similarly situated individuals, and allege, upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

2.  The Covid-19 pandemic confronts Americans with one of the greatest health and economic crises in the history of our nation, threatening the lives and livelihoods of millions. Shared sacrifice and mutual responsibility have never been more important to navigate these uncertain times. Tens of millions have been forced to file for unemployment in a matter of

weeks, and pocketbooks are being stretched like never before For individuals and businesses alike, the need for cash and liquidity has never been greater.

3. Unfortunately, Air Portugal, an international airline that carried more than 17 million passengers and took in over a billion dollars in 2019, has refused to honor its contractual obligations during this crisis.

4. With mounting flight cancellations due to the Covid-19 pandemic, Defendant has refused to provide contractually guaranteed full cash refunds for cancelled flights to passengers. Defendant has reprehensibly extracted maximum capital from customers, while padding their own balance sheets. Defendant's innocent customers are now left holding the bag.

5. In lieu of contractually guaranteed refunds, Defendant has, at best, required Plaintiff and the Class to accept devalued, expiring flight coupons for use on its own airline that carry substantially less or no value to Plaintiff and the Class during this uncertain time.

6. Defendant's uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this action against Defendant for breach of contract and to seek an order from this Court requiring Defendant to, among other things, (1) discontinue the illegal practice of issuing coupons in lieu of refunds to any Class Member who has not requested coupons, and (2) pay damages and/or restitution to Plaintiff and the Class.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant, a citizen of a foreign state.

8. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in Massachusetts, including entering into contracts with Massachusetts residents, maintaining a continuous physical business presence in Massachusetts, and providing flights and services in Massachusetts. Defendant maintains a registered office in the State of Massachusetts at the Boston Logan International Airport, Terminal C, 1 Harborside Drive, Boston, MA 02128. Further, a substantial portion of the acts complained of herein took place in Massachusetts.

9. Venue is proper in this District because Defendant systematically and continuously conducts business in this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

10. Plaintiff Mary Plummer is an individual and a citizen of Florida.

11. Defendant TRANSPORTES AEREOS PORTUGEUSES S.A. is a foreign corporation organized under the laws of Portugal with its principal place of business in Lisbon, Portugal. Defendant's registered agent in Massachusetts is Corporation Service Company, 84 State Street, Boston, MA 02109.

## FACTUAL ALLEGATIONS

12. Air Portugal is an international air carrier that ordinarily offers hundreds of regular flight routes, servicing 84 international destinations in 36 countries on multiple continents, including Europe, Asia, Africa, North America, and South America.

13. Defendant's flight route network provides regular routes to numerous airports and destinations in the United States, including Boston, Chicago, Miami, New York, San Francisco, and Washington D.C..

14. Defendant's regular routes include multiple flights departing from and arriving at Boston's Logan International Airport (BOS), which is located in the District of Massachusetts.

15. Defendant offers and sells flight tickets directly to customers, who make monetary payments to Defendant in exchange for a selected flight itinerary that conforms to customer's specifcatlly selected travel schedule.

16. Defendant collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

17. As part of each ticket purchase, Defendant made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

18. In Air Portugal's Contract of Carriage, which was last updated January 2020, Defendant promises "without prejudice to any applicable law" that in the event of a cancelled flight, it will offer passengers the choice of "[t]he full refund of the ticket not flown, in the form of travel credit or refund through the same form of payment you made when you purchased the Ticket."[1]

19. Under U.S. law, 49 U.S.C.S. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the

---

[1] file:///C:/Users/matth/Downloads/General%20Conditions%20of%20Carriage%20EN-BR%20Jan2020.pdf (last visited April 30, 2020).

[DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section. *Enhancing Airline Passenger Protections*, 76 Fed. Reg. 23110-01, 23129.

20. Prior to the Covid-19 crisis, Defendant honored its promises and warranties to offer passengers full refunds, as required by DOT rules.

### *Defendant's Disgraceful Response to the Covid-19 Pandemic*

21. On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

22. As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

23. On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

24. Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the 36 countries where they offer air travel.

25. By March, it was abundantly clear that the United States was going to be hit hard by the rapidly spreading Covid-19 pandemic and that dramatic changes to ordinary consumer behavior, including widespread discontinuation of non-essential travel and congregating in enclosed spaces (like airports and airplanes), were imminent.

26. Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

27. The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

28. It was entirely known and foreseeable to Defendant that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

29. Yet, Defendant quietly ceased honoring contractual agreements with Plaintiff and the putative class by discontinuing full cash refunds for cancelled and substantially rescheduled flights. Instead, at best, Defendant offered customers only devalued redeemable credits for future use on their own airline.

30. On its website, Air Portugal states that only expiring vouchers will be provided, and only upon request by the passenger.

31. Defendant has erected bureaucratic barriers which prevent many passengers from requesting credits/vouchers, further ensuring a windfall for Defendant.

32. Defendant also set harsh and untenable expiration dates on the future credits, permitting the company to receive a windfall because many passengers will not redeem the credits.

33. The practice of offering expiring credits is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when international air travel will once again be safe.

34. The future flight credits provide Defendant additional opportunities to charge service, processing, baggage, and other fees that will ensure Defendant additional future

profits—while retaining Plaintiff cash in the interim—substantially diminishing any value for Plaintiff and the putative class.

35. Recognizing the abuse, and potential for abuse, by Defendant and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind Defendant that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

36. On April 3, 2020, the DOT issued a notice to remind carriers that, "passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed."[2] The notice stated that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, *the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged*." (Emphasis added).

37. The DOT notice continued that:

[t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.

---

[2] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited April 24, 2020).

> Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.
>
> …
>
> Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

38. In addition to violation of its own contract of carriage, Defendant has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712 and offer full refunds to its passengers.

39. Defendant has deprived Plaintiff and the Class of the monetary refunds to which they are entitled by (1) failing to provide refunds to their credit or debit cards; (2) automatically issuing coupons or vouchers in place of refunds; (3) rendering it functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or (4) obscuring passengers' right to a monetary refund.

40. To the extent that it can be argued that Defendant's terms purport to require any affirmative action on the part of any passenger to choose a monetary refund over an automatic coupon or voucher, which by their terms they do not, such requirement is void as contrary to law and public policy.

*Plaintiff's Use of Defendant's Services*

41. Plaintiff Mary Plummer purchased two one-way tickets from Defendant for she and her husband. The flights were scheduled for May 3, 2020 and included legs from Hamburg to Lisbon to Boston, Logan International Airport.

42. Plaintiff booked her tickets through a travel agent, AAA.

43. Plaintiff paid approximately $1,550 for the tickets using a credit or debit card.

44. Without any notice to Plaintiff or her travel agent, Defendant cancelled Plaintiff's May 3 flight in March 2020.

45. Plaintiff learned about the cancellation only by visiting Defendant's website.

46. No leg or portion of Plaintiff's scheduled flight through Defendant's airline occurred.

47. Plaintiff did not engage in any international air travel in relation to the tickets she purchased from Defendant.

48. Defendant did not and cannot provide Plaintiff alternative transportation of any kind in relation to the tickets she purchased.

49. Plaintiff's flight was not and will not be rescheduled by Defendant.

50. As instructed by Defendant's website, Plaintiff made efforts to contact her travel agent to obtain a refund following the cancellation. The travel agent made numerous attempts to contact Defendant. However, Defendant failed to respond to any of the multiple communications over the course of more than a month.

51. More than a month has passed since the cancellation, and Defendant has failed to offer or provide Plaintiff with a monetary refund for her cancelled tickets.

52. Defendant has not even offered Plaintiff a travel voucher as compensation for the cancelled flight.

53. Plaintiff does not want, nor could she use, a quickly expiring coupon/voucher for use on Defendant's airline. At this time, Plaintiff does not feel safe booking any international travel due to the ongoing pandemic.

54. Plaintiff has suffered damages as a result of Defendant conduct.

## **CLASS ALLEGATIONS**

55. Plaintiff brings this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on a TAP Air Portugal flight to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Defendant, and who were not provided a monetary refund, including charges and fees. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a monetary refund; (b) any person who requested and received alternative air transportation in lieu of a monetary refund; (c) all persons who are employees, directors, officers, and agents of either Defendant; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

56. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

57. Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant carries millions of passengers per year on tens of thousands of normally scheduled of flights. A significant percentage of those flights beginning in March 2020 have been cancelled. At a minimum, there are more than ten

thousand Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

58. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. Common issues include:

- A. Whether Defendant formed contracts with its passengers in selling them tickets for air travel;
- B. Whether Defendant's conduct breaches the terms of its contracts with its passengers;
- C. Whether Defendant is required to provide a monetary refund, rather than an expiring voucher, to passengers for cancelled flights.
- D. The nature of the relief, including equitable relief, to which Plaintiff and the class are entitled.

59. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendant's unlawful conduct, which occurred pursuant to a uniform policy.

60. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

61. Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be

wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

62. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

63. Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### Breach of Contract

64. Plaintiff incorporates all factual allegations in the Complaint by reference as if fully set forth herein.

65. A contract was formed between Plaintiff and Class members on the one hand and Defendant on the other with respect to the purchase of airfare.

66. The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by purchasing their tickets.

67. The contract that governs the transactions at issue in this case requires refunds for cancelled flights where the passenger does not elect to take substitute transportation.

68. Plaintiff and the Class performed their obligations under the contract.

69. Defendant breached the contract when it sought to provide rapidly expiring, devalued coupons or vouchers in lieu of refunds for passengers on canceled or substantially delayed/interrupted flights.

70. Defendant's breaches were willful and not the result of mistake or inadvertence.

71. As a result of Defendant's breach, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the class of similarly situated individuals, requests the Court to:

(a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representatives of the class and designate counsel of record as class counsel;

(b) Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiff and class members and/or order Defendant to disgorge profits they realized as a result of their unlawful conduct;

(c) Order Defendant to pay punitive damages, as allowable by law, to Plaintiff and class members;

(d) Declare Defendant's conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(e) For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f) For costs of the proceedings herein;

(g) For reasonable attorneys' fees as allowed by law; and

(h) Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff, on behalf of herself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: April 30, 2020                                         Respectfully submitted,

s/William P. Doyle, III
William P. Doyle, III (#556999)
COLONNA & DOYLE
26 Main Street, 3rd Floor
Lynnfield, MA 01940
Tel: (781) 245-1127
Fax: (781) 245-1148
bill@colonna-doyle.com

**LIDDLE & DUBIN, P.C.**

David R. Dubin (PHV Forthcoming)
ddubin@ldclassaction.com
Nicholas A. Coulson (PHV Forthcoming)
ncoulson@ldclassaction.com
975 E. Jefferson Avenue
Detroit, Michigan 48207

Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiff and the Putative Class*